IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 1:17-00195

WINDEL LESTER
JAMES EDWARD LESTER
GEORGETTA KENNEY
GREG A. LESTER
JAMES KEITH BROWNING

<u>MEMORANDUM OPINION AND ORDER</u>

Before the court are a number of pretrial motions.  At the parties' first pretrial motions hearing on April 18, 2018, the court heard arguments as to defendants' motions to sever and motions for production of documents pursuant to Federal Rule of Criminal Procedure 17(c).  The court reviews these motions and the government's motion for a Rule 17(c) subpoena.  ECF No. 229.

## I.   FACTUAL BACKGROUND

Without rehashing the 53-page Second Superseding Indictment ("Indictment"), the government represents the facts as follows: Windel Lester, James Lester, Georgetta Kenney, Greg Lester, James Keith Browning, Dudley Bledsoe, Ricky Gleason, and others purchased homes located in Matoaka, Huntington, and Ikes Fork, West Virginia.  They applied for and received insurance coverage for these homes (Liberty Mutual Insurance for the Matoaka and Huntington properties, Homesite Insurance Company for the Ikes

Fork property).  After obtaining coverage, they set fire to the homes, filed false insurance claims, and received insurance proceeds.  ECF No. 142 at pp. 3-5.

Counts 1-3 charge all defendants in general wire fraud, arson, and money laundering conspiracies.  Id. at pp. 5-8. Counts 4-19 relate to the Matoaka property fire and include charges against Windel Lester, James Lester, and Georgetta Kenney.  Id. at pp. 11-20.  Counts 20-33 relate to the Huntington property fire and include charges against Windel Lester, James Lester, Georgetta Kenney, and Greg Lester.  Id. at pp. 21-39.  Significant to this Memorandum Opinion and Order, Count 25 charges James Lester with evading currency transaction reports through his cash deposits of $9,500, $9,000, and $9,200 between May 8 and May 14, 2013.  Id. at p.27.  Lester allegedly used these deposits to obtain a $27,500 cashier's check, which Ricky Gleason used as partial payment towards the purchase of the Huntington property.  See id. at pp. 21-23, 27.  Counts 34-40 relate to the Ikes Fork property fire and include charges against James Lester and James Browning.  Id. at pp. 40-44.

The government makes the following allegations regarding the participation of unindicted co-conspirator, Dudley Bledsoe. As to the Matoaka conspiracy, at the solicitation of James Lester and with the financial assistance of Windel Lester, Georgetta Kenney, and James Lester, Bledsoe purchased, filed the

deed in his name, and obtained insurance coverage for the
Matoaka property. Id. at pp. 11-12. With James Lester's
assistance, Bledsoe obtained unscented candle oil and set fire
to the Matoaka property. Id. at p.13. After the fire, Bledsoe
reported the fire to Liberty Mutual and participated in
submitting fraudulent insurance claims. Id. at pp. 12-16. Upon
receipt of the insurance proceeds, Bledsoe withdrew at least
some of the proceeds from his Pioneer Bank account at the
direction of Windel Lester, James Lester, and Georgetta Kenney.
Id. at p.20. Bledsoe, Windel Lester, James Lester, and
Georgetta Kenney divided these insurance proceeds. Id. at p.14.

As to the Ikes Fork conspiracy, Bledsoe allegedly met with
James Browning and James Lester and agreed to purchase and set
fire to the property to collect insurance proceeds. Bledsoe
contributed $5,000, half of the purchase price for the Ikes Fork
property. Id. at p.41. With the assistance of James Lester and
Browning, Bledsoe obtained the necessary materials and prepared
the Ikes Fork property to be burned (he is not alleged to have
actually set the fire). Id. at pp. 41-42. Bledsoe received
approximately $30,000 of the insurance proceeds. Id. at pp. 43-
44.

While named as an unindicted co-conspirator in this case,
on March 14, 2018, Dudley Bledsoe came before this court and
pled guilty to an Information which charged him with one count

of engaging in unlawful monetary transactions in violation of 18
U.S.C. §§ 1957 and 2.  See United States v. Bledsoe, 1:18-cr-
00035, ECF No. 11.  This charge related to the receipt of
insurance proceeds resulting from the Matoaka property fire.  At
the hearing, the court found Bledsoe competent and accepted his
plea of guilty.  Id.

## II.  DEFENDANTS' MOTIONS TO SEVER

Before the court are four (4) motions to sever: (1)
Georgetta Kenney's Motion to Sever (ECF No. 196), (2) Greg
Lester's Motion to Sever, (ECF No. 197), (3) Windel Lester's
Motion to Sever Defendants James Lester and Greg Lester, (ECF
No. 203), and (4) Windel Lester's Motion to Preclude Evidence
of/ Sever Claims Against James Keith Browning, (ECF No. 204).
For the reasons that follow, each motion is **DENIED**.

### A. Applicable Law

"[J]oinder is the rule rather than the exception."  United
States v. Hawkins, 776 F.3d 200, 206 (4th Cir. 2015) (internal
quotation marks omitted).  Rule 8(b) of the Federal Rules of
Criminal Procedure provides that the government may charge
multiple defendants together "if they are alleged to have
participated in the same act or transaction, or in the same
series of acts or transactions, constituting an offense or
offenses."  "Absent special circumstances, defendants indicted
together should be tried together, and this presumption is

4

especially strong in conspiracy cases." United States v. Harris, 498 F.3d 278, 290 (4th Cir. 2007) (internal quotations omitted).

Severance is governed by Rule 14 of the Federal Rules of Criminal Procedure and states in part: "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

The prejudice necessary to require severance is not whether the evidence is greater against one defendant or whether a defendant may have a better chance of acquittal in a separate trial. See Zafiro v. United States, 506 U.S. 534, 540 (1993). Instead, severance is required only upon a showing that a jury is unable to make a reliable decision concerning guilt, or upon a showing that there is "a serious risk that a joint trial will compromise a specific trial right of one of the defendants." United States v. Min, 704 F.3d 314, 319 (4th Cir. 2013) (quoting Zafiro v. United States, 506 U.S. 534, 538 (1993)).

In Bruton v. United States, the Supreme Court annunciated that a defendant's Sixth Amendment right to confrontation may be compromised when the government seeks to introduce an out-of-court confession of one co-defendant (who may not refuse to testify) which 1) incriminates another co-defendant and 2) the

confession is inadmissible against that co-defendant.  See 391
U.S. 123, 135-37 (1968).  In this situation, the Court
explained:

> [T]here are some contexts in which the risk that the
> jury will not, or cannot, follow instructions is so
> great, and the consequences of failure so vital to the
> defendant, that the practical and human limitations of
> the jury system cannot be ignored. . . . Such a
> context is presented here, where the powerfully
> incriminating extrajudicial statements of a
> codefendant, who stands accused side-by-side with the
> defendant, are deliberately spread before the jury in
> a joint trial. . . . It was against such threats to a
> fair trial that the Confrontation Clause was directed.

Id. at 135-36.  Accordingly, the Bruton Court determined that
the co-defendant's confession resulted in a "powerfully
incriminating extrajudicial statemen[t]," and that its
introduction violated Bruton's Sixth Amendment Rights.  Id. at
135.

## B. Discussion

While the four (4) motions to sever vary slightly, (1)
Georgetta Kenney's Motion to Sever, (2) Greg Lester's Motion to
Sever, and (3) Windel Lester's Motion to Sever Claims Against
James Keith Browning all allege that other co-conspirators are
more or less culpable.  See ECF Nos. 196, 197, 204.  At the
hearing, counsel for defendants representations admitted as
much.  As stated above, severance "requires more than
fingerpointing" as to comparative culpability.  United States v.
Najjar, 300 F.3d 466, 474 (4th Cir. 2002); Hawkins, 776 F.3d at

6

206 ("[T]he prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding.") (internal quotation marks omitted). Therefore, and for the reasons stated at the hearing, these motions are **DENIED**.  ECF No. 196, 197,[1] 204.

The fourth motion to sever, Windel Lester's Motion to Sever Defendants James Lester and Greg Lester alleges that severance is required under Bruton.  ECF No. 203.  The motion alleges that James Lester and Greg Lester made out-of-court confessions which are admissible against them, but not against Windel Lester.  ECF No. 203.

### 1. James Lester's Statements

On November 16, 2017, the West Virginia Insurance Commission and United States Postal Inspector questioned James Lester about three (3) May 2013 deposits he made with the Bank of Mingo.  ECF No. 215-1.  These deposits took place on May 8,

---

[1] Greg Lester's "Supplemental Pre-Trial Motions" contains not only a motion to sever, but also a "Motion to Exclude Irrelevant Evidence."  See ECF No. 197 at p.4.  In that motion, Greg Lester seeks to omit all references and evidence concerning his involvement in the 2012 purchases of a boat with trailer and three (3) jet skis from Boone Lake Marina.  Id.  The government responded that Windel Lester and James Lester, not Greg Lester, made these purchases and therefore the issue is moot.  ECF No. 220.  Accordingly, the court **DENIES** the motion as moot.  If Greg Lester contends that a controversy remains, he may file a renewed motion that the court will hear at the second pretrial motions hearing on July 12, 2018.

9, and 14 were for $9,500, $9,000, and $9,200 respectively.  ECF
No. 215.  In response to questioning, the government asserts
that Lester admitted he knowingly made these deposits to avoid
the bank from mandatorily filing Currency Transaction Reports
("CTR").  See ECF No 215-1 at p.30.  These acts of "structuring"
serve as the substance for Count 25 of the Indictment, in which
James Lester is the only defendant charged.

Having reviewed the transcript of James Lester's
questioning, the court is persuaded that the jury can view his
statements in a vacuum.  While these cash deposits were
allegedly used to obtain a $27,500 cashier's check as partial
payment for the Huntington property by Ricky Gleason, see ECF
No. 216 at pp. 21-23, James Lester acknowledged that as a matter
of course, he never deposited more than $10,000 in cash due to
the CTR requirement.  See ECF No. 215-1 at p.30 ("[The CTR
requirement is] the reason why I never did like, deposit more
than ten thousand dollars if I had it at one time or something .
. .").  This admission by James Lester undermines Windel
Lester's argument that these three (3) structured deposits were
motivated by a desire to conceal his actions in view of the
greater conspiracy as alleged by the government.

Moreover, James Lester's "admissions" to the conduct
underlying Count 25 do not substantially impart guilt upon the
co-defendants regarding other charges within the Indictment.

8

However, because the court is cognizant that this Indictment charges a conspiracy, the court will confer with the parties to draft a proper limiting instruction in an attempt to cure any foreseeable prejudice to Windel Lester and other co-defendants. See Min, 704 F.3d at 319; Zafiro, 506 U.S. at 539 ("less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.").

**2. Greg Lester's Statements**

On November 21, 2017, co-defendants Greg Lester, James Lester, Windel Lester and another inmate, Laron Safford, were transported from Southern Regional Jail to the Charleston district courthouse for hearings. ECF No. 215-2. During the drive and while the inmates were awaiting their hearings, the co-defendants allegedly discussed the case with Safford, making incriminating statements. Id. Safford later testified to the government regarding the substance of these conversations. Id. While the recorded statements do not perfectly detail the timeline of these communications, it appears that all incriminating statements were made while all three co-defendants were with Safford.[2]

---

[2] Safford states that for some period of time, Windel Lester and Greg Lester had court hearings, leaving Greg Lester and Safford alone. During this period however, the substance of their conversation appears to focus on Greg Lester's bond, not defendants' guilt. See ECF No. 215-2 at p.10.

Counsel for Windel Lester argues that the statements are inadmissible against Windel Lester and would violate his constitutional right to confrontation if Greg Lester chooses not to testify. ECF No. 203. However, the statements of Greg Lester (and Windel Lester) are plainly nontestimonial and therefore do not implicate the Confrontation Clause. See United States v. Dargan, 738 F.3d 643, 651 (4th Cir. 2013) ("Bruton is simply irrelevant in the context of nontestimonial statements."). To be testimonial, the court must determine "whether a reasonable person in the declarant's position would have expected his statements to be used at trial—that is, whether the declarant would have expected or intended to 'bear witness' against another in a later proceeding." United States v. Udeozor, 515 F.3d 260, 267 (4th Cir. 2008) (citing Crawford, 541 U.S. at 52); Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310 (2009) (Testimonial statements include "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.").

The statements made to Safford accord with the Fourth Circuit's recent opinion in Dargan, 738 F.3d 643. In that case, Dargan's co-defendant, Harvey, made two confessions to his cellmate. First, Harvey admitted to robbing the jewelry store. Second, despite not actually naming his co-conspirators, Harvey

10

stated that both co-conspirators were detained at the same facility.  Id. at 646.  The Fourth Circuit held that these statements were "plainly nontestimonial" because "jailhouse disclosures to a casual acquaintance were not made with an eye toward trial.  He had no plausible expectation of 'bearing witness' against anyone."  Id. at 650-51 (citing United States v. Jones, 716 F.3d 851, 856 (4th Cir. 2013)).  Refusing to find a Bruton violation, the Fourth Circuit relied on the Supreme Court's general assertion that "'statements from one prisoner to another' are 'clearly testimonial.'"  Id. (quoting Davis v. Washington, 547 U.S. 813, 825 (2006)).  The Fourth Circuit went further stating, "Bruton espoused a prophylactic rule designed to prevent a specific type of Confrontation Clause violation.  Statements that do not implicate the Confrontation Clause, a fortiori, do not implicate Bruton."  Id. at 651.  Accordingly, the statements of Greg Lester (and Windel Lester) to another inmate were not made with an eye toward trial, are non-testimonial, and do not implicate Bruton.

Additionally, the government asserts that Windel Lester's silence and own statements constitute an adoptive admission of Greg Lester's statements.  The court agrees.  A statement made by someone else may be treated as a statement of the party if the party adopts the statement.  See Fed. R. Evid. 801(d)(2)(B).  "A party may manifest adoption of a statement in any number of

11

ways, including through words, conduct, or silence." <u>United</u> <u>States v. Robinson</u>, 275 F.3d 371, 383 (4th Cir. 2001) (internal alteration omitted).

> When a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which <u>the</u> <u>jury could infer</u> that the defendant heard, understood, and acquiesced in the statement.

<u>United States v. Jinadu</u>, 98 F.3d 239, 244 (6th Cir. 1996)) (emphasis added) (cited by <u>Robinson</u>, 275 F.3d at 383). The substance and context of Greg Lester's statements indicate Windel Lester heard, understood, and acquiesced to these communications. First, the alleged actions of Windel Lester constitute an adoption by silence due to his failure to allege that James Lester's statements were false. See <u>Robinson</u>, 275 F.3d at 383; see also <u>United States v. Williams</u>, 445 F.3d 724, 735 (4th Cir. 2006) ("If someone says in the defendant's presence that 'this is the money the defendant got when he robbed the bank,' it is logical for the jury to conclude that the defendant would have spoken up if he in fact had not robbed the bank."). Even more clear-cut, Windel Lester allegedly <u>contributed</u> to the conversation by "jump[ing] in and sa[ying]" that he's not going to roll on the Bank," despite pressure from law enforcement to do so. ECF No. 215-2 at p.8. Accordingly,

Greg Lester's statements are admissible against Windel Lester
and the motion is **DENIED**.

### III. MOTIONS FOR PRODUCTIONS OF RECORDS

Greg Lester and Windel Lester each have requested the court
issue a Rule 17(c) subpoena to third parties.  Arguments were
heard on each motion at the April 18, 2018 pretrial motions
hearing.  ECF Nos. 198, 221.  Additionally, on June 8, 2018, the
government filed its own motion requesting issuance of a Rule
17(c) subpoena.  ECF No. 229.

Because the court has already discussed the applicable law
for Rule 17(c) subpoenas as established by United States v.
Nixon, 418 U.S. 683 (1974) and its progeny, the court refers the
parties to the courts' prior Memorandum Opinion and Order
denying Windel Lester's first motion for a Rule 17(c) subpoena.
See ECF No. 207.  Nevertheless, it is important to recall Rule
17(c)'s parameters: (1) "Its chief innovation was to expedite
the trial by providing a time and place before trial for the
inspection of the subpoenaed materials" and (2) it is not
intended to provide a means of discovery in criminal cases in
excess of the contours of Rule 16 of the Federal Rules of
Criminal Procedure.  Bowman Dairy Co. v. United States, 341
U.S., 214, 221 (1951).  To meet these thresholds, the moving
party must "clear three hurdles: (1) relevancy; (2)
admissibility; (3) specificity."  Nixon, 418 U.S. at 699-700.

13

### A. Greg Lester's Request as Modified Is Granted

Greg Lester requests the court order the Southern Regional Jail provide him with a copy of the visitation log of Laron Safford, who as stated _infra_, is serving as a government informant.  ECF No 198.  At the pretrial motions hearing, the government did not oppose the motion and the court **GRANTED** defendant's motion.  After a thorough review of the proposed subpoena, the court modifies the proposed subpoena to require Southern Regional Jail to provide a copy of Laron Safford's visitation log from November 16, 2017 to December 21, 2017 (the date of Safford's detainment to 30 days after the alleged statements were made).

### B. Windel Lester's Request for Dudley Bledsoe's Pharmaceutical Records Is Denied, But His Request for Bledsoe's Social Security "Notice of Decision" Is Granted

Windel Lester's motion takes a second stab at requesting Dudley Bledsoe's pharmaceutical records from three (3) pharmacies and his social security disability records from the Social Security Administration ("SSA") in advance of trial.  ECF No. 221.  The court previously denied, without prejudice, both requests on April 10, 2018.  See ECF No. 207.  Now, however, Windel Lester has narrowed both requests.

### 1. Windel Lester's Pharmaceutical Records Requests Fail the Specificity and Irrelevancy Prongs of <u>Nixon</u>

Windel Lester requests that Adkins Pharmacy, Rite Aid Pharmacy, and Gilbert Pharmacy provide him with records of all medication distributed to Bledsoe between August 1, 2012 and December 5, 2013.  ECF No. 222-2.  These dates correspond with Bledsoe's alleged involvement in the Matoaka and Ikes Fork fires.  ECF No. 221 at ¶ 4.

Defendant's requests, albeit narrowed in scope, still result in a fishing expedition.  Counsel for defendant is only able to opine what medications that Bledsoe could have been prescribed.  <u>United States v. Leaver</u>, 358 F. Supp. 2d 273, 276 (S.D.N.Y. 2005) ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes something useful will turn up, the requirement of specificity will not have been met.") (citation omitted).  Defendant does not know what he is looking for and asks the court to order, and the pharmacies to dredge up, all medications distributed to Bledsoe over a 14-month period.  The result of this request is no different than deep sea fishing in that the subpoena could catch a diverse array of medications.

Moreover, even with this information in hand, the defendant is left with only conjecture as to how these prescriptions affected Bledsoe's mental state during the time period at issue.

### 2. Windel Lester's SSA Record Request Complies with Nixon

Windel Lester also requests the SSA's "Notice of Decision to Grant Benefits to . . . Bledsoe and any related attachments or exhibits" from the SSA." ECF No. 221-2 at p.1. In support of this request, Windel Lester attaches the affidavit of Misty Lee stating not only that she personally cashed Bledsoe's social security check, but also that the social security check included Bledsoe's wife as payee. ECF No. 222-1.

The Lee affidavit gives factual support for Windel Lester's request for the SSA Notice of Decision and corresponding attachments and exhibits. Accordingly, this "good faith effort to obtain identified evidence" meets Windel Lester's burden of specificity. Cuthbertson, 630 F.2d 139, 144 (3d Cir. 1980), cert. denied, 449 U.S. 1126 (1981), cited by In re Grand Jury 87-3 Subpoena Duces Tecum, 884 F.2d 772, 777 (4th Cir. 1989).

The request is also relevant. Bledsoe's Notice of Decision is the pertinent document towards Windel Lester's inquiry. After a claimant applies for social security benefits, the SSA makes an initial determination as to claimant's entitlement to benefits and notifies the claimant in writing. See 20 C.F.R. §§

16

404.900(a), 404.904.  This notification is commonly known as a
"Notice of Decision."  Moreover, this initial determination
includes whether the SSA determines that a beneficiary requires
a representative payee.  See 20 C.F.R. § 404.902.  The SSA can
appoint a "representative payee" if the "Commissioner of Social
Security determines that the interest of any individual . . .
would be served" by the appointment.  42 U.S.C. § 405(j)(1)(A);
see also 42 U.S.C. § 1383 (stating that the SSA can appoint a
representative payee to receive a beneficiary's Social Security
funds "for the use and benefit of the individual or eligible
spouse").  The SSA may appoint a representative payee for a
number of reasons all stemming from an individual's inability to
manage his own benefits.  See 42 USC §405(j)(1)(A).[3]  The SSA,
not the beneficiary, determines if a representative payee is
necessary.  See 20 C.F.R. § 416.601(a) ("A representative payee
will be selected if [the SSA] believe[s] that the interest of a
beneficiary will be served by representative payment"); see also

---

[3] "Beneficiaries needing a payee fall into one of three basic
categories: (1) child beneficiaries—almost all children under
age 18 have payees, (2) those who are legally incompetent or
mentally incapable of managing benefit payments, and (3)
beneficiaries who are physically incapable of managing or
directing the management of their benefit payments."  U.S. GOV'T
ACCOUNTABILITY OFFICE, GAO-13-473, SSA REPRESENTATIVE PAYEE
PROGRAM: ADDRESSING LONG-TERM CHALLENGES REQUIRES A MORE
STRATEGIC APPROACH, 14 (2013), available at
http://www.gao.gov/assets/660/654893.pdf (footnote omitted).

Mason v. Sybinski, No. 00-IP-0988, 2001 WL 619389, at *1 (S.D. Ind. May 15, 2001), aff'd, 280 F.3d 788 (7th Cir. 2002) (The "SSA decides whether it should appoint a representative payee, and it will do so if it determines that a beneficiary is not able to manage or direct the management of benefit payments in his or her interest.").

Assuming that Bledsoe's wife serves as Bledsoe's representative payee, the SSA's determination that Bledsoe required a representative payee, encapsulated within the Notice of Decision, places Bledsoe's financial fitness in controversy. A finding of financial incompetency could be relevant to this case because this case is not simply about arson, but the related fraudulent financial transactions. ECF No. 216 at p.1 ("The Second Superseding Indictment charges Defendant[s] . . . in three separate conspiracies: a mail and wire fraud conspiracy, an arson conspiracy, and a money laundering conspiracy.) (emphasis added).

The government alleges that Bledsoe assisted in the conspiracy not only with the fires, but also through receiving monies to purchase the properties, paying for insurance, and directly profiting from the conspiracy. See supra, at pp. 3-4. Bledsoe's finances and financial transactions are at issue in this matter, therefore the SSA's decision regarding Bledsoe's capability to handle his own financial affairs is relevant.

Finally, this Notice of Decision is admissible because Bledsoe is an essential government witness who would be called to testify at trial.  The <u>Nixon</u> court stated, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."  418 U.S. at 701. To this end, courts have concluded that impeachment evidence "ripen[s] into evidentiary material only if and when the witness testifies at trial." <u>Cuthbertson</u>, 630 F.2d at 144.  However, "where it is known with certainty before trial that the witness will be called to testify," district courts in this district have held that this general rule is overcome. <u>United States v. King</u>, 194 F.R.D. 569, 574 (E.D. Va. 2000), cited by and applied in <u>United States v. White</u>, 2013 WL 1404877, at * 5-6 (S.D.W. Va. Apr. 5, 2013) (Johnston, J.) <u>rev'd on other grounds</u>, <u>Kinder v. White</u>, 609 Fed. Appx. 126 (4th Cir. 2015) (determining the production of documents for the limited purpose of impeachment is still admissible because "there is no question . . . [the witness] will testify at trial."); <u>see also United States v. LaRouche Campaign</u>, 841 F.2d 1176, 1180 (1st Cir. 1988) (holding district court did not abuse its discretion by compelling pretrial production of materials related to the impeachment of an unindicted co-conspirator).  Given Bledsoe's alleged direct involvement with the Matoaka and Ikes Fork property fires, the court has no doubt that Bledsoe will serve as a pivotal witness

for the government.

**C. The Government's Request for "Any and All" Records of Ricky Gleason, William Toler, and Greg Lester from a Casino Fails to Comply with <u>Nixon</u>.**

The government requests that the Rio All-Suites Hotel and Casino located in Las Vegas, Nevada produce "any and all information related to Ricky Gleason (Rio Total Rewards Gold Card Number 15400261746), William Leslie Toler, II, and Greg Lester" between June 1, 2013 through June 30, 2013.  ECF No. 229-1.  The government's motion and proposed subpoena do not even attempt to satisfy the <u>Nixon</u> test.  See <u>infra</u>; ECF No. 207.  "Requests for 'any and all documents' are emblematic of a discovery request or of a fishing expedition." <u>United States v. Shepard</u>, No. 4:09CR423 RWS DDN, 2010 WL 750110, at *3 (E.D. Mo. Feb. 26, 2010) (collecting cases); <u>United States v. Wai Lun Ng</u>, No. 5:07CR24-V, 2007 WL 3046215 at *3 (W.D.N.C. Oct. 16, 2007) (quashing proposed subpoenas, holding that a Rule 17(c)subpoena which requests "'any and all' documents are too broad to meet the test outlined in <u>Nixon</u>.").

Moreover, the indeterminate nature of the documents requested by the government poses problems under the admissibility and relevancy prongs of <u>Nixon</u>, because the court cannot predict what documents will be produced and how they could be utilized at trial by the government.  Accordingly, the court **DENIES** the government's request that the court issue its

proposed subpoena.  ECF No. 229.

### IV.  CONCLUSION

Accordingly, the court **DENIES** defendants' motions to sever. ECF Nos. 196, 197, 203, 204.

The court (1) **GRANTS** Greg Lester's request for Laron Safford's visitation log from the Southern Regional Jail as modified by the court, (ECF No. 198), (2) **GRANTS** in part and **DENIES** in part Windel Lester's Renewed Motion for Production of Records, (ECF No. 221), and **DENIES** the government's motion to produce, (ECF No. 229).  The court requests that, consistent with this Memorandum Opinion and Order, counsel for Greg Lester and Windel Lester provide the court with proposed Rule 17(c) subpoenas.  These subpoenas should indicate that production shall be made to the court within twenty (20) days of the entry of this Memorandum Opinion and Order.  Upon receipt of the requested documents, the court will disseminate these documents to counsel for all defendants, the government, and counsel for Laron Safford and Dudley Bledsoe (respective to their representation).

The Clerk is directed to send a copy of this Order to counsel of record, Dudley Bledsoe's counsel, Jeffrey Simpkins, and Laron Safford's counsel, G. Todd Houck.

**IT IS SO ORDERED** this 19th day of June 2018.

ENTER:

David A. Faber
Senior United States District Judge