IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

UNITED STATES OF AMERICA

v.                              CRIMINAL ACTION NO. 1:17-00195

WINDEL LESTER
JAMES EDWARD LESTER
GEORGETTA KENNEY
GREG A. LESTER
JAMES KEITH BROWNING


MEMORANDUM OPINION AND ORDER

This case involves a complicated and wide-ranging scheme to commit fraud by setting fire to three dwellings and filing false claims for insurance proceeds.  Properties burned were located at 101 Smokeless Road, Matoaka, West Virginia ("Matoaka Fire"); 3542 Norwood Road, Huntington, West Virginia ("Huntington Fire"); and 9068 Interstate Highway, Ikes Fork, West Virginia ("Ikes Fork Fire").  At trial in August 2018, defendants James Edward Lester, aka "Punkin", Georgetta Kenney, Greg A. Lester, and Windel Lester, were found guilty of various offenses by a jury.  A fifth defendant named in the original indictment, James Keith Browning, pled guilty to one count of a second superseding indictment and did not go to trial.

At the conclusion of the government's evidence, all four defendants who went to trial moved for judgment of acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure. The court reserved ruling on the motions under Rule 29(b).

After their convictions, each defendant filed timely motions for judgment of acquittal, or in the alternative, for a new trial under Rule 29(c) and 33.  By orders previously entered, the court denied the post-trial motion of each defendant.  This Memorandum Opinion and Order addresses the defendants' motions made at trial under Rule 29(a).

<u>The Standard of Review</u>

In deciding a motion under Rule 29, the court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences to be drawn from that evidence.  <u>United States v. Bailey</u>, 819 F.3d 92, 95 (4th Cir. 2016); <u>United States v. Lespier</u>, 725 F.3d 437, 447 (4th Cir. 2013) <u>cert</u>. <u>denied</u>, 134 S.Ct. 974 (2014); <u>United States v. Royal</u>, 731 F.3d 333, 337 (4th Cir. 2013); <u>cert</u>. <u>denied</u>, 134 S.Ct. 1777 (2014); <u>United States v. Tresvant</u>, 677 F.2d 1018, 1021 (4th Cir. 1982).  The trial court is not permitted to judge the credibility of the witnesses; it must assume that the jury resolved all contradictions in favor of the government.  <u>United States v. Romer</u>, 148 F.3d 359, 364 (4th Cir. 1998), <u>cert</u>. <u>denied</u>, 525 U.S. 1141 (1999).  If the court reserves, under Rule 29(b), its rulings on a Rule 29(a) motion made at the conclusion of the government's evidence at trial it must decide the motion on the basis of the evidence at the time the ruling was reserved.  The express language of Rule 29(b) so

2

requires.  Denial of a Rule 29(a) motion will be affirmed on appeal if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.  <u>Tresvant</u>, 677 F.2d at 1021.

The Rule 29(a) Motion of Windel Lester

In paragraphs 33 through 47 of the second superseding indictment, the government sets out the specific acts it alleges were carried out in support of the scheme to defraud.  Windel Lester is specifically mentioned in three of these paragraphs, 36, 47 and 48.  Paragraph 36 charged that Windel Lester instructed Georgetta Kenny, who was then his wife, to write a check for $38,000 from their joint bank account to Dudley Bledsoe so he could purchase the house located at 101 Smokeless Road in Matoaka, West Virginia.  Bledsoe used the money to buy the house and it was subsequently burned and a claim for insurance filed.  In paragraph 47, the government charged that Windel Lester knowingly transmitted and caused to be transmitted by mail or fax machine various documents as part of the scheme to defraud.  Paragraph 48 alleges that Windel Lester "placed and caused to be placed" various documents in furtherance of the scheme.

In support of the Rule 29(a) motion made at trial, counsel argued there was "absolutely no evidence that Windel Lester

3

instructed anybody to write any checks" and there was no evidence that Windel Lester transmitted, mailed or faxed any documents. Counsel argued that the evidence must show that Windel Lester himself did the acts charged. Counsel stated: "I believe that they must provide evidence he actually transmitted to, to pursue that, pursue that claim so that claim can go to the jury." Windel Lester also contends that, by charging in the conjunctive "placed and caused" the government must prove the entirety of the allegation, not just a portion; in other words proving only that he "caused" the documents to be mailed or faxed is insufficient.

Count 18 of the second superseding indictment charged Windel Lester with knowingly engaging and attempting to engage in a prohibited monetary transaction. Counsel argued that there was no evidence from which a jury could conclude that Windel Lester knew the money was derived from criminal activity. Similarly, Count 19 involved a $196,000 monetary transaction completed by Dudley Bledsoe. Windel Lester argued there is no evidence he instructed or counseled Bledsoe with regard to this transaction. Similar arguments were made with regard to the remaining counts of conviction – no evidence to show Windel Lester's involvement in, or knowledge of, the criminal nature of the actions taken by others, specifically Dudley Bledsoe, Ricky Gleason and Georgetta Kenney.

4

The court has reviewed the evidence as it existed at the conclusion of the government's case at trial and finds ample evidence to support, as to each count, a jury's conclusion of guilt. While Windel Lester cagily insulated himself from direct involvement in much of the criminal activity, it is clear from the evidence that he was the principle mover in the scheme to defraud. For example, while Dudley Bledsoe got the $38,000 check from Georgetta Kenney, it is clear that Windel Lester told her to write it. Bledsoe was well aware of the relationship between Windel Lester and his then wife Georgetta and he knew that Georgetta would not make any sort of financial transaction without being directed to do so by Windel. Bledsoe testified that Windel arranged to have the check cashed.

The evidence makes clear that Windel Lester was deeply involved in the scheme to burn the house in Matoaka, West Virginia. He provided false receipts to enhance the amount of the loss claim; he provided the funds to buy the house and shared in the proceeds from the fraudulent claim.

The evidence shows that Windel Lester recruited Ricky Gleason to purchase the property in Huntington, West Virginia, for the purpose of burning it and filing a fraudulent insurance claim. Windel told Gleason he could "make some easy money." Gleason testified that Windel Lester provided the money to buy the property and handled most of the paperwork involved in the

purchase.  Gleason testified that Windel Lester participated in the purchase of low-cost used items to furnish the house and discussed with Gleason timing of the arson.

Cases make clear that the United States does not have to prove every specific act charged in the indictment to sustain a verdict of guilty on the fraud schemes.  See United States v. McNeil, 45 Fed. Appx. 225 (4th Cir. 2002); United States v. Briscoe, 65 F.3d 576, 585 (7th Cir. 1995).  It is sufficient for the government to prove the scheme to defraud and the defendant's involvement.  Id.  Nor does the government have to prove the defendant personally mailed or faxed documents in support of the scheme to defraud.  Cases such as United States v. Godwin, 272 F.3d 659 (4th Cir. 2001), hold that the word "cause" in a mail fraud prosecution requires only that the mailing be reasonably foreseeable.

Windel Lester's argument that use of the conjunctive in the charging language of the indictment requires proof of the entirety of the allegation is without merit, as the cases make clear.  The government may charge in the conjunctive and prove in the disjunctive.  United States v. Vann, 660 F.3d 771, 774 (4th Cir. 2011).

### The Rule 29(a) Motion of James Lester

James Lester argued at the conclusion of the government's case that there was no evidence "that James Lester signed any

6

insurance documents, cashed any checks, made any claims." And that a contents list he provided to Dudley Bledsoe and Heather England for use in filing a false insurance claim was provided without knowledge that it would be used to commit fraud.

There was, however, ample evidence adduced at trial to take the case against James Lester to the jury. Dudley Bledsoe testified that James approached him about buying a house and burning it. James Lester assisted Bledsoe in getting insurance on the property and helped arrange the purchase price. Bledsoe testified that James Lester provided him with a list of furniture and other property that Bledsoe and his daughter, Heather England, used to fill out an insurance claim. It defies reason to assume that James Lester provided this list without knowledge that it would be used to file a false claim. Bledsoe testified that, with regard to the Ikes Fork property, he and James Lester arranged for James Browning to buy the house and file an insurance claim. Bledsoe explained that, since he and James Lester had each had a fire, they needed someone else to buy this property to avoid suspicion. Bledsoe's testimony was corroborated in many particulars by James Browning. Browning testified that James Lester approached him to burn a house in order to make money. They wanted to put the house in Browning's name because he had a clean history.

This, and other evidence adduced at trial, shows clearly that James Lester was deeply involved in the conspiracy and it was certainly reasonably apparent to him that mailings, faxes and phone calls would be made in furtherance of the scheme, since such transmissions were essential to complete the fraudulent scheme.

### The Rule 29(a) Motion of Greg Lester

Counsel argued in support of the motion that Greg Lester had nothing to do with the Matoaka and Ikes Fork fires and therefore could not be guilty of the counts related to these fires. The government countered with the argument that although Greg Lester was not directly involved in these fires that does not equate to a lack of guilty knowledge.

William Toler testified about the Huntington fire and his own involvement. According to Toler, Greg Lester went to Huntington and participated in the preparation to burn the property. Laron Safford testified that, while incarcerated, he rode in a police van with Windel and Greg Lester. Greg told Safford that he helped put furniture in the Huntington property and the property was burned to collect insurance money. Bank records show that Greg Lester deposited a check in the amount of $17,190.27 issued by an insurance carrier to Dudley Bledsoe as part of the proceeds from the Matoaka fire. Greg Lester was also involved in the withdrawal of $11,965 and the transfer of

8

$11,965 between the bank accounts of himself and Windel Lester, all related to proceeds from the Matoaka fire. These monetary transactions are the subject of Counts 29 and 31 of the indictment against Greg Lester. While Greg Lester was not directly involved in the Matoaka fire, he was certainly aware of the conspiracy. A logical conclusion is that he knew the money involved in these transactions was derived form criminal activity.

### The Rule 29(a) Motion of Georgetta Kenney

Viewed in the light most favorable to the government, the evidence is sufficient to establish Georgetta Kenney's involvement in the conspiracy and her guilty knowledge. At Windel Lester's direction, she wrote a check for $38,000 for purchase of the Matoaka property. According to Bledsoe, in the presence of himself, Windel Lester and James Lester, Georgetta said, "be careful. You are going to get in trouble." This is clear evidence of knowledge that the money would be used in furtherance of the arson conspiracy. According to the testimony of J. C. Miller, an investigator with the West Virginia State Insurance Commission, Georgetta admitted, when interviewed by Miller that she had signed documents used to further the conspiracy. With regard to the Huntington fire, she obtained a $72,000 cashier's check and had Ricky Gleason named as the remitter.

9

Conclusion

The evidence summarized above, and other evidence adduced at trial, when viewed in the light most favorable to the government, is more than sufficient to take the case against all four defendants to the jury.  Accordingly, the Rule 29(a) motion of each defendant, made at the conclusion of the government's evidence at trial is DENIED.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record, the Probation Office of this court, and the United States Marshal for the Southern District of West Virginia.

It is SO ORDERED this 29th day of January, 2019.

ENTER:

David A. Faber
Senior United States District Judge