IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

UNITED STATES OF AMERICA

v.                                            CRIMINAL ACTION NO. 1:17-00195-02

JAMES EDWARD LESTER

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant's motion for compassionate release.  (ECF No. 516.)  Also pending is defendant's motion for reconsideration of a previous order denying compassionate release, ECF No. 495. (ECF No. 510.) Defendant requests compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) because of his alleged particularized risk of contracting a severe case of COVID-19 due to his underlying health conditions and because of an alleged sentencing disparity.  For the following reasons, the court will deny the motions.

I.  **Background**

On August 23, 2018, defendant was convicted of twenty-three felony counts for the following criminal violations:  mail and wire fraud conspiracy, arson conspiracy, money laundering conspiracy, wire fraud, mail fraud, arson to commit wire fraud, unlawful monetary transactions, and structuring transactions. On April 9, 2019, this court sentenced defendant to 17 years of imprisonment.  Per the Bureau of Prisons ("BOP") Inmate Locator,

defendant's release date is July 23, 2032. Defendant is currently incarcerated at FCI Ashland, where, as of February 14, 2022, there were 16 cases of COVID-19 among the inmate population and 4 cases among the staff. <u>COVID-19 Coronavirus</u>, Bureau of Prisons.[1]

Defendant is 51 years old. He states that he suffers from the following conditions: diabetes (Type 2), hypertension, high cholesterol, sleep apnea, COPD, degenerative disk disease, facet neuropathy, major depressive disorder, and hearing loss. He also states that he is obese and has a hernia.[2]

On April 3, 2020, defendant petitioned the Warden at FCI Ashland for compassionate release due to COVID-19. The Warden denied defendant's request on April 30, 2020. Defendant appealed the Warden's denial through a request for administrative remedy on June 10, 2020, and his appeal was denied by the Warden on June 19, 2020.

It is unknown whether defendant has received COVID-19 vaccinations. There is no reason to believe, however, that

---

[1] Available at https://www.bop.gov/coronavirus/.

[2] Defendant's previous motions omit COPD, degenerative disk disease, facet neuropathy, major depressive disorder, and hearing loss. The court has reviewed the medical records attached to the instant motions and has been unable to locate a COPD diagnosis. For purposes of this opinion, however, the court will take defendant at his word.

COVID-19 vaccinations would be unavailable to him. FCI Ashland has administered full vaccinations to 1,088 inmates.

## II. Analysis

The First Step Act empowers criminal defendants to ask courts to grant them compassionate release pursuant to 18 U.S.C § 3582(c). But before they make such requests to the courts, defendants must first ask BOP via the administrative process and give BOP thirty days to respond. See id. § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after either BOP denies the request or thirty days has elapsed since the request was filed), a court "may reduce the term of imprisonment." Id. § 3582(c)(1)(A)(i). Here, the court will assume without finding that defendant has exhausted his administrative remedies.[3]

Three considerations guide district courts in determining whether relief is permissible, and if so, deciding whether it is warranted, under § 3582(c)(1)(A):

> First, the court determines whether extraordinary and compelling reasons support a sentence reduction. District courts are entitled to make their own independent determinations of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A) and are thus empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Second, the court considers whether granting a sentence reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission. Although there

---

[3] This exhaustion requirement is non-jurisdictional "and thus waived if it is not timely raised." United States v. Muhammad, 16 F.4th 126, 129 (4th Cir. 2021).

3

> are no applicable policy statements that govern a defendant's motion for compassionate release, the policy statement at U.S. Sentencing Guidelines Manual § 1B1.13—which applies to compassionate release motions filed by the Bureau of Prisons—remains helpful guidance even when motions are filed by defendants. <u>Third, the court must consider any applicable 18 U.S.C. § 3553(a) sentencing factors before deciding whether to exercise its discretion to reduce the defendant's sentence.</u>

<u>United States v. Colleton</u>, No. 21-6015, 2022 WL 18500, at *1 (4th Cir. Jan. 3, 2022) (citations and internal quotation marks omitted) (emphasis added).

Because there is no binding policy statement in this context, the second consideration—consistency with applicable Sentencing Commission policy statements—is not an independent prong of the analysis. <u>See</u> <u>United States v. McCoy</u>, 981 F.3d 271, 284 (4th Cir. 2020). But the second consideration does not fall away completely because it is appropriate for district courts to consider § 1B1.13 of the Federal Sentencing Guidelines "in defining what should be considered an 'extraordinary and compelling circumstance' warranting a sentence reduction." <u>United States v. Jenkins</u>, 22 F.4th 162, 169 (4th Cir. 2021). In other words, § 1B1.13 is folded into the first prong of the analysis as a non-binding definitional aid. <u>Id.</u> at 169-70 ("Thus, the district court may consider any extraordinary and compelling reasons raised by the defendant as well as review § 1B1.13 to determine whether there is a sufficient

'extraordinary and compelling circumstance' warranting a sentence reduction."); see also United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("So while U.S.S.G. § 1B1.13 is not applicable to *defendant-filed* motions under § 3582(c), it defines, in the medical context, the same substantive term that applies to *BOP-filed* motions. One might reasonably believe therefore that the term "extraordinary and compelling reasons" will be defined the same for *defendant-filed* motions.").[4]

---

[4] Comment 1(A) to U.S.S.G. § 1B1.13 states as follows:

> 1. Extraordinary and Compelling Reasons.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a

Ultimately, then, the compassionate release analysis for a defendant-filed motion requires determining (1) whether there exist extraordinary and compelling reasons to make discretionary relief permissible and (2) (if so) whether the sentencing factors in § 3553(a) counsel in favor of such relief.  See High, 997 F.3d at 186.  The court now turns to those two prongs, mindful that it is defendant's burden to establish his entitlement to relief.  See United States v. Edwards, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).  The court is also mindful that compassionate release is "an extraordinary and rare event." United States v. Mangarella, 3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, *2-3 (W.D.N.C. Mar. 16, 2020).

Defendant's motion fails on both prongs.  On the first prong, defendant has not established extraordinary and compelling reasons for a sentence reduction because even considering his underlying conditions and the presence of COVID-19 at FCI Ashland, the ready availability of COVID-19 vaccines sufficiently mitigates defendant's risk of a severe case of COVID-19 such that he has not shown a particularized susceptibility to a severe COVID-19 infection and a particularized risk of such infection.  Further, the modest number of infections at FCI Ashland does not reflect that the

---

correctional facility and from which he or she is not expected to recover.

risk of infection at the facility is much greater (if at all) than outside the facility. On the second prong, the sentencing factors, as applied to present circumstances, do not counsel in favor of granting any sentence reduction. The present sentence remains sufficient but not greater than necessary to fulfill the purposes of sentencing.

    a. **Extraordinary and Compelling Reasons**

The United States Court of Appeals for the Fourth Circuit has recognized that "arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19." High, 997 F.3d at 185. In determining whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, courts have considered the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility. See United States v. Brady, S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (citing and gathering cases). Thus, compassionate release motions amid the COVID-19 pandemic require a "fact-intensive" inquiry. See United States

7

v. Shakur, No. 82 CR 312 (CSH), 2020 WL 1911224, at *1 (S.D.N.Y. Apr. 20, 2020).

### 1. Medical Conditions and Severe COVID-19 Susceptibility

Defendant argues that his underlying health conditions place him at severe risk of contracting a severe case of COVID-19 in light of the BOP's alleged inability to protect inmates from transmission of the coronavirus. Defendant has health conditions that are on the CDC's list of conditions that can make a severe case of COVID-19 more likely, including obesity, COPD, major depressive disorder (depression), diabetes, and hypertension. People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention.[5]

As to obesity, defendant's medical records from July 28, 2020, indicate that he had a BMI of 40.6, which would make him severely obese by CDC standards. Id. According to the CDC:

> Overweight (defined as a body mass index (BMI) ≥ 25 kg/m2 but < 30 kg/m2), obesity (BMI ≥ 30 kg/m2 but < 40 kg/m2), or severe obesity (BMI of ≥ 40 kg/m2), can make you more likely to get severely ill from COVID-19. The risk of severe COVID-19 illness increases sharply with elevated BMI.

Id. (emphasis added). It is significant that defendant alleges not just obesity, but severe obesity. The CDC recognizes that not all obesity is the same when it comes to COVID-19 outcomes,

---

[5] Available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.

8

stating that "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI."  Id.  The findings of a recent CDC report "highlight[ed] a dose-response relationship between higher BMI and severe COVID-19-associated illness and underscore the need for progressively intensive illness management as obesity severity increases."  Kompaniyets L, Goodman AB, Belay B, et al. Body Mass Index and Risk for COVID-19-Related Hospitalization, Intensive Care Unit Admission, Invasive Mechanical Ventilation, and Death — United States, March–December 2020.[6]  Further, obesity is one of three conditions a CDC study found to have "the strongest association with death" in relation to COVID-19 infections.  Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Providers, Ctrs. for Disease Control & Prevention.[7]

Defendant's depression is also very concerning because it is another of one of the three conditions a CDC study found to have "the strongest association with death" in relation to

---

[6] Available at https://www.cdc.gov/mmwr/volumes/70/wr/mm7010e4.htm#suggestedcitation.

[7] Available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html#:~:text=Main%20Findings&text=Obesity%2C%20diabetes%20with%20complications%2C%20and,a%20condition%20increased%20with%20age.

9

COVID-19 infections. Id. Defendant's diabetes and COPD are also very concerning in light of information from the CDC. People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention. Defendant's hypertension is concerning, but not to as great of an extent, as hypertension is only "possibly" a condition that increases the risk of a severe infection. Id.

Defendant's conditions must be considered not only alone but also as a whole because "[h]aving multiple conditions also increase[s] risk." Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Providers, Ctrs. for Disease Control & Prevention. Defendant also has some conditions that are not on the CDC's list, including high cholesterol, sleep apnea, facet neuropathy, hearing loss, and a hernia. These factor into the totality of the circumstances but are of the least concern. Defendant's age is also important to consider, as "[a]ge is the strongest risk factor for severe COVID-19 outcomes." Id.

What cannot be understated in the totality of the circumstances here, however, is defendant's access to COVID-19 vaccines. With such access, defendant's risk profile for a severe COVID-19 infection has been dramatically altered for the better. According to the CDC, being vaccinated makes it less likely to become infected: "COVID-19 vaccines are effective at

10

preventing infection, serious illness, and death. Most people who get COVID-19 are unvaccinated." <u>The Possibility of COVID-19 after Vaccination: Breakthrough Infections</u>, Ctrs. for Disease Control & Prevention.[8] And even if a vaccinated person does get infected, the CDC says that he is far less likely to experience severe complications: "Fully vaccinated people with a vaccine breakthrough infection are less likely to develop serious illness than those who are unvaccinated and get COVID-19." <u>Id.</u>

The extraordinary circumstances analysis surrounding COVID-19 develops as the COVID-19 situation does, and the widespread availability of effective COVID-19 vaccines for federal inmates is a very significant development. <u>See</u> <u>United States v. Kibble</u>, 992 F.3d 326, 336 (4th Cir.), <u>cert. denied</u>, 142 S. Ct. 383 (2021) (Quattlebaum, J., concurring) ("The pace of vaccinations for COVID-19—including in prisons—is accelerating. For that and other reasons, the COVID-19 pandemic continues to evolve, seemingly improving but surely changing. Even so, we may still have occasion to grapple with the meaning of 'extraordinary and compelling reasons.'"). The Fourth Circuit has yet to squarely confront the argument for "a per se rule that would always preclude a finding of extraordinary and compelling reasons when

---

[8] Available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html.

11

the movant has been vaccinated." See United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (declining to resolve the issue because it was not raised below).

It appears that the Sixth and Seventh Circuits have adopted something close to such a per se rule. See United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("Lemons's access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. To that end, we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction.").

Even without such a per se rule, however, persuasive authority suggests that proving a particularized susceptibility to a severe case of COVID-19 in a post-vaccination world requires significantly more than it did in a pre-vaccination world. See United States v. Tatum, No. 3:19CR146 (DJN), 2022 WL 287695, at *4 (E.D. Va. Jan. 31, 2022) ("Courts have concluded that, because vaccination mitigates the risk of contracting COVID-19 and, in the case of breakthrough infections, protects against serious illness, vaccination weighs against a request for compassionate release.); United States v. Evans, No. 4:04-CR-00140-TLW, 2022 WL 286190, at *3 (D.S.C. Jan. 31, 2022)

12

("Defendant no longer constitutes an 'extraordinary and compelling reason' warranting release because Evans has been vaccinated against COVID-19."); United States v. Daniels, No. 1:03-CR-00083-MR, 2022 WL 256320, at *2 (W.D.N.C. Jan. 26, 2022) ("While the Defendant still faces some risk of infection, the fact that the Defendant faces a slight risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief he requests."); United States v. Smith, No. 3:15CR101, 2021 WL 3641463, at *3 (E.D. Va. Aug. 17, 2021) ("Further, because the vaccine mitigates the risk of contracting COVID-19, the defendant must provide other evidence to establish an extraordinary and compelling reason for compassionate release based upon his concern about contracting the virus.").

Defendant has a litany of significant underlying health conditions that are quite concerning individually and (especially) collectively. But the COVID-19 vaccine has now profoundly mitigated the risks that those conditions pose. Vaccine availability[9] is at once very helpful to inmates seeking to avoid severe COVID-19 infections and very unhelpful to inmates' arguments for compassionate release based on COVID-19

---

[9] It is the availability of the vaccine, not the fact that an individual defendant actually received it, that matters. See Lemons, 15 F.4th at 751. Thus, the analysis is the same regardless of whether an inmate has received or refused the vaccine (unless there is a compelling reason that he or she cannot receive the vaccine).

13

susceptibility.  The court acknowledges that cases may arise or the COVID-19 landscape may change such that a defendant may still show extraordinary and compelling reasons based on COVID-19 susceptibility.  Having considered the totality of the circumstances here, however, the court finds that this case is not one of them.  Defendant has not shown that his medical conditions result in a particularized susceptibility to a severe COVID-19 infection and a particularized risk of such infection such as to amount to extraordinary and compelling reasons for compassionate release.

### 2. Sentencing Disparity

Defendant also asserts a sentencing disparity as grounds for compassionate release.  He compares his sentence to those of his codefendants and concludes that his sentence was excessive.  Defendant's argument completely overlooks how his conduct differed from those of his codefendants.  The court considered the need to avoid unwarranted sentencing disparities when imposing defendant's sentence.  Defendant's implication that codefendants should always receive similar sentences does not persuade.  Having reviewed the record, the court is confident that the sentence imposed was appropriate given the facts of the case as they pertain to this particular defendant.

### a. Section 3553(a) Sentencing Factors

Even if the court were to conclude that defendant has

presented an extraordinary and compelling reasons for release, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting the discretionary relief that would then be permissible. These factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a). Having reviewed the sentencing factors as they apply to defendant afresh, the court finds that granting defendant's motion for compassionate release would be inconsistent with them.

Defendant's crimes were indisputably serious. He was convicted of committing arson and fraud, among other crimes, and has a significant restitution obligation. There is a need to protect the public from further such crimes, both physically and

financially. There is also a substantial deterrence interest at stake here. The sentence must be sufficient such that both defendant and the public think twice before burning down structures to make money in fraudulent schemes. Defendant has inflicted extensive losses through his conduct, and while it is true that there is a restitution order to address those losses, early release would be inconsistent with the severity of defendant's offenses and the interest in providing just punishment for them. Also, if defendant is going to become a productive member of society upon his release, he needs the time remaining on his sentence to make further rehabilitative efforts and receive sufficient educational and vocational training.

Also, at this point, defendant has more than ten years left to serve on his sentence. The court acknowledges that the amount of time remaining on the original sentence is but one factor to be considered. See United States v. Kibble, 992 F.3d 326, 331 (4th Cir. 2021) (noting that the court was entitled to consider amount of time defendant served as one factor in the § 3553(a) analysis). This factor, however, is not in defendant's favor.

In sum, the court finds that granting defendant's motion for compassionate release would be inconsistent with the sentencing factors set forth in § 3553(a). The need to protect the public, promote respect for the law, provide just

16

punishment, deter others from similar conduct, and ensure that defendant receives sufficient educational and vocational training, substantially outweigh the arguments that defendant has made for his early release. Given the nature and circumstances of the offense and defendant's history and characteristics, a sentence of 204 months of imprisonment remains necessary to achieve the goals of sentencing, and a reduction of the magnitude that defendant seeks (or any reduction) would run counter to those objectives.

### III. Conclusion

Having considered the entire record in this matter, including the filings related to the instant motions, the court concludes that defendant has not presented extraordinary and compelling reasons that would justify his release. Furthermore, even if such extraordinary and compelling circumstances were present, a sentence reduction would not serve the sentencing objectives of 18 U.S.C. § 3553(a). Therefore, the court **DENIES** defendant's motion for compassionate release (ECF No. 516). The court also **DENIES** defendant's request for reconsideration (ECF No. 510) as duplicative of his renewed motion.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

**IT IS SO ORDERED** this 15th day of February, 2022.

ENTER:

*David A. Faber*

David A. Faber
Senior United States District Judge